UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS SHIPMAN, *et al.*, | : | 3:11-CV-01162 |
| Plaintiffs | : | |
| | : | (Judge Mannion) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| JINADA ROCHELLE, *et al.*, | : | |
| Defendants | : | |

## **REPORT AND RECOMMENDATION**

**I. Introduction.**

The remaining claims in this case are negligence claims against members or former members of the Pennsylvania Human Relations Commission based on their investigation and handling of the plaintiffs' complaint alleging racial discrimination. Because the defendants were acting within the scope of their employment in their investigation and in their handling of the plaintiffs' complaint, and because the plaintiffs' claims do not fall within any of the exceptions to sovereign immunity applicable to these Commonwealth employees, the plaintiffs' claims against the defendants are barred by sovereign immunity. Accordingly, we recommend that the defendants' motion for summary judgment be granted.

**II. Background and Procedural History.**

In June of 2011, the plaintiffs, Dennis Shipman, Alicia Brooks, and their infant son K.T.S., began this action by filing a complaint, and in July of 2011, they filed an amended complaint naming as defendants Aldo Gelso, Gnu Gelso, Jinada Rochelle, Christine Rice, Tiffany Epoca, Homer Floyd, and Steven A. Glassman. Defendants Rochelle, Rice, Epoca, Floyd, and Glassman are employees and former employees of the Pennsylvania Human Relations Commission (PHRC). The plaintiffs claim that the defendants conspired and violated state and federal law in connection with the failure of Aldo and Gnu Gelso to rent a property to them because of their race and in connection with the PHRC investigation of their complaint concerning that failure.

The amended complaint contains five counts. Count One contains claims under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* Count Two contains claims under a purported Pennsylvania Fair Housing and Employment Act. Count Three contains claims under the Pennsylvania Human Relations Act, 43 P.S. § 955. Count Four contains claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201.9.2(a). And Count Five contains negligence claims. All of the plaintiffs' claims have been either dismissed or

2

settled except the negligence claims against defendants Rochelle, Rice, Epoca, Floyd, and Glassman.

After the close of discovery, defendants Rochelle, Rice, Epoca, Floyd, and Glassman (the defendants) filed a motion for summary judgment, a statement of material facts, a brief, and documents in support of their motion. The plaintiffs did not respond to the motion for summary judgment as required by Local Rules 7.6 and 56.1. We specifically ordered the plaintiffs to file, on or before February 28, 2013, a brief in opposition to the defendants' motion for summary judgment in accordance with Local Rule 7.6 and a counterstatement of material facts with supporting documents in accordance with Local Rule 56.1. Still, the plaintiffs did not respond to the summary judgment motion. We now address the unopposed motion for summary judgment.

**III. Summary Judgment Standard.**

The defendants have moved for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011)(quoting Fed.R.Civ.P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the

materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, *supra*, 477 U.S. at 322. Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson, supra,* 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49. When "faced with a summary judgment motion,

the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011)(quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or

shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

**IV. The Material Facts.**

A party who seeks to resist a summary judgment motion must comply with Local Rule 56.1, which specifically provides that "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required" by the moving party "as to which it is contended that there exists a genuine issue to be tried." The Rule further requires "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements" and that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." Under this Rule, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendants means that those facts must be deemed

7

admitted. The plaintiffs have not filed a response to the defendants' statement of material facts. Thus, in accordance with Local Rule 56.1, they are deemed to have admitted the following facts set forth by the defendants.

The PHRC is a Commonwealth agency acting under the Pennsylvania Human Relations Act (Act), 43 P.S. §§ 951- 963. The PHRC is a non-partisan commission responsible for the administration and enforcement of Pennsylvania's anti-discrimination laws and for promoting equal opportunity. The mission of the PHRC is to administer and enforce the Act and the Pennsylvania Fair Educational Opportunities Act, 24 P.S. §§ 5001-5010, through investigation, identification, and elimination of unlawful discrimination and the promotion of equal opportunity for all persons. Pursuant to the Act, the PHRC has the power and duty "[t]o initiate, receive, investigate and pass upon complaints charging unlawful discriminatory practices," 43 P.S. § 957(f), including complaints of housing discrimination. The Act prohibits discrimination in housing on the basis, among others, of race. As employees and former employees of the PHRC, the defendants are familiar with the PHRC's policies and procedures as well as state and federal anti-discrimination laws.

The plaintiffs filed a complaint with the PHRC alleging that Aldo and Gnu Gelso discriminated against them because of their race in violation of the Act, 43 P.S. §§ 951-963. Specifically, the PHRC complaint alleged that the Gelsos refused to lease housing to the plaintiffs because of their race. This complaint was originally filed with the U.S. Department of Housing and Urban Development and was then referred to the PHRC for investigation. The PHRC conducted a thorough, comprehensive investigation of the plaintiffs' complaint, and based upon this investigation, the PHRC found that the evidence was not sufficient to show that an unlawful act of discrimination had occurred. As a result of this investigation, a report entitled "Findings of the Investigation" was prepared by defendant Rochelle and approved by defendant Rice. The "Findings of the Investigation" is the report which is typically prepared by PHRC staff upon completion of an investigation. It was within defendant Rochelle's regular job duties and functions to prepare this report, and it was within defendant Rice's regular job duties and functions to approve this report.

As a result of the investigation, the following findings of fact were stated in the PHRC's report regarding the plaintiffs' complaint:

> 1. The [plaintiffs are] member[s] of the protected class.

1.1. [The plaintiffs] are African American.

2. The [plaintiffs] did apply, bid or otherwise seek the position, housing or commercial property, public accommodation, or educational opportunity.

2.1. On November 18, 2009, [the plaintiffs] scheduled an appointment to meet [the Gelsos] on November 21, 2009, to view the home.

2.2. [The plaintiffs] aver[] that the appointment time to view the rental unit was for 4:00 pm.

3. A position, housing or commercial property, public accommodation, or educational opportunity was available.

3.1. On October 25, 2009, [the Gelsos] advertised the rental unit in The Sunday Record.

4. The [plaintiffs were] not rejected or subjected to techniques to discourage [them].

4.1. [The plaintiffs] contend that they were discouraged from renting the property because [the Gelsos] directed them to the wrong home.

4.2. [The plaintiffs] contend[] the appointment to view the home was at 4pm.

4.3. [The Gelsos] aver that the appointment time to view the property was for 1:00 pm.

4.4. On November 21, 2009, [the plaintiffs] met Mrs. Gelso, at her home at 4:30 pm.

4.5. In a telephone interview Mrs. Gelso stated that when [the plaintiffs] arrived at their home, she directed them next door to the property that was vacant. Mrs. Gelso states the vacant home was partially visible from their home and is approximately 200 feet away.

4.6. Mr. Gelso states he was showing the property to persons who he believed were the [plaintiffs].

4.7. [The plaintiffs] state they drove by a home they believed was occupied.

4.8. [Mr. Gelso's] car and the applicants [sic] car were in the driveway of the vacant home. Mr. Gelso believes that is why the [plaintiffs] thought the home was occupied.

4.9. [The plaintiffs] were unable to locate the house where Aldo [Gelso] was and attempted to call [the Gelsos] 3 times.

4.10. All three calls went unanswered.

4.11. [The Gelsos] believe[] [the plaintiffs] lost their way and proceeded to a site other than the site where Aldo [Gelso] was showing the property.

4.12. On November 21, 2009, Mrs. Gelso asked Mr. Gelso if he saw the [plaintiffs] on the road because it is [a] private road but Mr. Gelso did not see them. Gelso went out to look for the [the plaintiffs] but did not see them.

4.13. Mr. Gelso further contends he shows the vacant homes from 8 am to 5 pm. At 5 pm he and his wife went to dinner.

4.14. In a telephone interview on January 5, 2010, Mr. Gelso said the home was still available and that he would rent to the [plaintiffs] if they were interested.

4.15. [The Gelsos] deny not showing the home to [the plaintiffs] because of their protected class.

4.16. [The Gelsos] contend[] they rent to various tenants regardless o[f] race or ethnic background. [The Gelsos] contend[] the[y] have rented to persons who were of American Indian, Hawaiian, Asian and Mexican ancestry.

4.17. From 2004 to 2007, [The Gelsos] rented a home to JB.

4.18. JB is a former tenant who is African American. JB stated she responded to an ad in the paper about a home for rent. She initially met with Mr. & Mrs. Gelso to view the home. She did not feel uncomfortable in their presence and the Gelso's [sic] were receptive to her. She lived in the home across the street from [the Gelsos]. Her son, who is darker skinned, lived with her also. Her sister who is also of a dark hue, stayed with her for a short period and did not have any negative interactions with the [Gelsos]. At times JB had conversations with [the Gelsos] without incident or feeling uncomfortable. The homes [the Gelsos] rented are located in a rural area with a good amount of space between the homes. The witness did not have any interactions with the other tenants. JB spoke with [the Gelsos] after she moved out and asked them to provide a rental reference which they

did without any problems. JB has since spoken to her son and her sister about their dealings with the [Gelsos] and they both state they have no complaints against [the Gelsos].

    4.19. [The Gelsos] contend[] the home was not rented until the end of February 2010.

    4.20. On February 28, 2010, SG & VD signed a lease agreement with [the Gelsos]. They rented the home [the plaintiffs] wanted to rent.

    4.21. SG and VD are race white.

    4.22. Census tracking from 2000 indicates that the population for Blooming Grove Township is 3.4% African American, .7% Asian and 95.9% Caucasian.

    4.23. 2000 Census tracking shows that there were 122 African Americans residing in Blooming Grove Township.

    4.24. [The Gelsos] preferred method of communication with prospective tenants is to give their home number to call [to] schedule and/or confirm an appointment. Once an appointment is confirmed [the Gelsos] give directions to the vacant home.

*Doc. 53-2* at 4-7.

Based upon and these Findings of Fact, the PHRC made a conclusion that "[a] finding of No Probable Cause is recommended because: the investigation did not establish a prima facie case. The evidence shows [the plaintiffs were] not denied the opportunity to view the vacant home. In addition [the Gelsos have] rented to an African American woman in the recent past." *Id.* at 7. The PHRC's findings of fact and conclusion of no probable cause were also approved by the U.S. Department of Housing and Urban Development.

Upon conclusion of the PHRC investigation, defendant Rochelle sent a letter to the plaintiffs stating that based upon the investigation, the PHRC found that the evidence was not sufficient to show that an unlawful act of discrimination had occurred. This letter explained that if the plaintiffs disagreed with the PHRC's findings, they may file a rebuttal within ten days, and the letter further explained that the rebuttal should state the reason why the plaintiffs disagreed with the findings and should include any additional information they had to support their position.

The plaintiffs submitted a rebuttal, to which defendant Rochelle responded by letter dated September 20, 2010. Rochelle's letter clearly explained that the PHRC reviewed the plaintiffs' telephone records during the investigation and that there was no assertion in the PHRC's analysis that the Gelsos called the plaintiffs three times.

After this letter was sent, the plaintiffs' case file was referred to the PHRC's Legal Division for review and defendants Rice, Rochelle, and Epoca had no further involvement with the plaintiffs' case. After the PHRC issued its Findings of the Investigation and determined that no probable cause existed to establish a prima facie case of discrimination, the case was closed pursuant to 16 Pa. Code § 42.61. After notification of the case closure, the plaintiffs requested a preliminary hearing pursuant to 16 Pa. Code § 42.62. As a Commissioner and Chairperson with the

PHRC, defendant Glassman reviewed the plaintiffs' request for a preliminary hearing pursuant to 16 Pa. Code § 42.63. On December 28, 2010, defendant Floyd sent a letter to the plaintiffs stating that the PHRC reviewed their request for a preliminary hearing and, at the PHRC's December 20, 2010 meeting, the Commissioners voted unanimously to deny the request "on the grounds that [the plaintiffs] presented no facts or evidence not considered at the time of the original finding or no facts or evidence that would alter the original finding." *Doc. 53-5* at 2. Because the PHRC denied the request for a preliminary hearing, the plaintiffs' case was closed.

As a Compliance Supervisor and former Human Relations Representative, defendant Rochelle is responsible for a variety of duties, which in a typical case may include the following: drafting and reviewing complaints; conducting investigations and interviews; negotiating settlements; gathering evidence; obtaining census track information; and drafting investigative findings and conclusions. Defendant Rochelle specifically took the following actions during the investigation of the plaintiffs' discrimination complaint: reviewed the complaint; attempted to negotiate a settlement; gathered evidence; conducted interviews; corresponded with the

plaintiffs and the Gelsos; obtained census data; drafted the findings of fact; and suggested the finding of no probable cause.

As a Housing Supervisor, defendant Rice is responsible for a variety of duties, which in a typical case may include the following: drafting and reviewing complaints; overseeing investigations; making sure answers are timely received; sending out subpoenas, if necessary; negotiating settlements; gathering evidence; conducting interviews; obtaining census track information; drafting and approving investigative findings; and reviewing and approving investigative conclusions. Defendant Rice specifically took the following actions during the investigation of the plaintiffs' discrimination complaint: reviewed the complaint; reviewed and approved the findings of fact; and reviewed and approved the finding of no probable cause.

As a Compliance Supervisor, defendant Epoca is responsible for a variety of duties, which in a typical case may include the following: overseeing investigations; directing Human Relations Representatives in their case loads and reviewing their work; gathering evidence; conducting interviews; drafting and approving investigative findings; and approving investigative conclusions. Defendant Epoca specifically took the following actions during the investigation of the plaintiffs'

discrimination complaint: gathered evidence; conducted interviews; and corresponded with the plaintiffs and the Gelsos.

As a Commissioner with and Chairperson of the PHRC, defendant Glassman acted as a public liaison, set policies to be implemented by staff, reviewed requests for preliminary hearings, and resolved cases that were not settled voluntarily by conducting public hearings. As a Commissioner and Chairperson, Defendant Glassman's role was strictly limited to the adjudicatory aspect of the PHRC. Defendant Glassman was shielded from having any involvement in the investigation of complaints or the issuing of findings so that he could remain neutral and objective when a case came before him for review or adjudication. Because of this shielding and separation of functions, defendant Glassman had no personal involvement whatsoever with the actual investigation of the plaintiffs' discrimination complaint and no involvement outside of reviewing the plaintiffs' request for a preliminary hearing pursuant to 16 Pa. Code § 42.63.

As the former Executive Director, defendant Floyd oversaw the PHRC's administrative, legal, and investigative staff and acted as a public liaison to promote equal opportunity. Defendant Floyd had no further personal involvement with the plaintiffs' housing discrimination complaint outside of the actions listed above.

All the actions that the defendants took during the investigation and review of the plaintiffs' discrimination complaint were within their job descriptions and duties and took place during the PHRC's normal business hours and within the PHRC's offices. Beyond the actions specifically listed above, defendants had no further involvement with the investigation or review of the plaintiffs' housing discrimination complaint and no further contact with the plaintiffs or the Gelsos.

## V. Discussion.

The defendants contend that they are entitled to sovereign immunity. "Sovereign immunity bars claims that are asserted against the Commonwealth, its agencies, and Commonwealth employees acting within the scope of their office or employment." *See* 1 Pa. Const. Stat. Ann. § 2310. Pennsylvania law waives sovereign immunity, however, in nine limited circumstances. These exceptions to the general grant of immunity to the Commonwealth and its employees are for negligent acts involving: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care,

17

custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa.C.S.A. § 8522(b).

The remaining claims in this case are negligence claims against the defendants based on their investigation and handling of the plaintiffs' PHRA complaint. The claims do not fall within any of the nine exceptions to sovereign immunity listed in 42 Pa.C.S.A. § 8522. So provided that the defendants were acting within the scope of their employment, the defendants are entitled to sovereign immunity. An action falls within the scope of a defendant's employment "'if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by the employer.'" *Mitchell v. Luckenbill,* 680 F.Supp.2d 672, 682 (M.D.Pa.2010) (quoting *Wesley v. Hollis,* No. 03–3130, 2007 WL 1655483, at \*14 (E.D.Pa. June 6, 2007)).

It is undisputed that all the actions that the defendants took during the investigation and review of the plaintiffs' discrimination complaint were within their job descriptions and duties and took place during the PHRC's normal

business hours and within the PHRC's offices, and so it is clear that the defendants were acting within the scope of their employment in their investigation and handling of the plaintiffs' PHRA complaint. Thus, the defendants are entitled to sovereign immunity.

**VI. Recommendation.**

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the defendants' motion (doc. 52) for summary judgment be granted.

> The Parties are further placed on notice that pursuant to Local Rule 72.3:
>
> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own

determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 30th day of July, 2013.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge